```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
  JAMES TRENT, as Preliminary Executor of    :
  the Estate of Margaret Ottavino; and A.    :
  OTTAVINO PROPERTY CORPORATION,             :
                                             :  **MEMORANDUM DECISION AND**
                        Plaintiffs,          :  **ORDER**
                                             :
          -against-                          :  23-cv-1294 (BMC)
                                             :
  INCORPORATED VILLAGE OF                    :
  WESTBURY; TADEUS A. BLACH, as              :
  Village Clerk and Treasurer of the         :
  Incorporated Village of Westbury; BR       :
  MADISON LLC; and NASSAU PROPERTY           :
  INVESTORS LLC,                             :
                                             :
                        Defendants.          :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiffs bring this action to challenge the seizure and sale of a property that had been in their family for 84 years. Plaintiffs are A. Ottavino Property Corporation ("AOPC"), the owner of the property before its seizure and sale, and James Trent, as preliminary executor of the estate of Margaret Ottavino, the former owner of AOPC.

Plaintiffs assert that defendants Village of Westbury and Tadeus A. Blach, the village clerk and treasurer of Westbury (together, the "Village"), confiscated the property pursuant to an unconstitutional application of New York State Real Property Tax Law and the Westbury Village Code. The Village sold the property at auction to BR Madison LLC ("BR Madison"), which subsequently sold the property to Nassau Property Investors LLC ("NPI," and together with BR Madison, the "Buyers").

Both the Village and the Buyers have filed motions to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that plaintiffs' claims are barred by, *inter alia*, the Rooker-Feldman doctrine and issue/claim preclusion. For the reasons set forth below, defendants' motions are granted.

## SUMMARY OF AMENDED COMPLAINT

Plaintiffs allege that, despite paying all county and town taxes on the property at issue in this case, they did not receive notification of the real estate tax due to the Village in 2013 because of a mailing error. Plaintiffs made late payment of these taxes in 2017, and the Village cashed the check that plaintiffs sent. However, pursuant to New York State Real Property Tax Law Section 1454 and the Westbury Village Code, Chapter 223, Article VI, Sections 223-26, the Village subsequently returned these funds and sold the property at auction to BR Madison "for $1897.51 and $1228.90," despite the value of the property exceeding $1 million. BR Madison, in turn, sold the property to NPI.

As plaintiffs acknowledge, this property has previously been the subject of two state court proceedings in Nassau County Supreme Court. NPI brought the first proceeding to quiet title to the property against A. Ottavino Property Corporation ("AOPC"). In opposing the action, AOPC argued that service of the notices of tax lien deficiencies had not been sent to it, but rather had been sent to the former owner, even though the property deed had been recorded and transferred to AOPC in the 1990s. The Supreme Court, Nassau County, rejected this argument and granted NPI's motion for summary judgment, declaring NPI the owner of record.

AOPC, then owned by Mary Ottavino, brought a second state court proceeding while the first was still pending, naming the Village, BR Madison, and NPI as defendants. By the time the state court issued a decision in this case, the first state court proceeding had already concluded, so the state court found that the action was barred by res judicata and collateral estoppel. AOPC

2

appealed this decision, arguing for the first time in its appellate brief that defendants had violated the Excessive Fines Clause of the Eighth Amendment. The Appellate Division affirmed the Nassau County Supreme Court's decision on collateral estoppel grounds without considering the merits of AOPC's other arguments, and the Court of Appeals denied a motion for leave to appeal. A. Ottavino Prop. Corp. v. Inc. Vill. of Westbury, 203 A.D.3d 920, 161 N.Y.S.3d 812 (2nd Dep't), leave to app. denied, 38 N.Y.3d 913, 174 N.Y.S.3d 54 (2022).

Sometime in between the second state court proceeding and the present action, Mary Ottavino passed away, leaving her interest in AOPC to Margaret Ottavino. Margaret Ottavino commenced this suit in February 2023 but also passed away shortly thereafter, and James Trent, as preliminary executor of Margaret Ottavino's estate, now sues on behalf of the estate, alongside AOPC. Plaintiffs request a declaratory judgment vacating the sale of the property to the Buyers and restoring the deed to AOPC, as well as stating that the New York State Real Property Tax Law and Westbury Village Code are unconstitutional as applied here.

## DISCUSSION

### I. Rooker-Feldman

"Under the Rooker-Feldman doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423, 426 (2d Cir. 2014) (citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283-84 (2005)). For the Rooker-Feldman doctrine to deprive a federal district court of jurisdiction, (1) "the federal-court plaintiff must have lost in state court," (2) "the plaintiff must complain of injuries caused by a state-court judgment," (3) "the plaintiff must invite district court review and rejection of that judgment," and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." Hoblock v. Albany

3

Cnty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005) (quoting Exxon Mobil, 544 U.S. at 284) (cleaned up).  The second requirement is a "core requirement from which the others derive" – "federal plaintiffs are not subject to the Rooker–Feldman bar unless they *complain of an injury caused by a state judgment*."  Id. at 87.  Consequently, "a plaintiff who seeks in federal court a result opposed to the one he achieved in state court does not, for that reason alone, run afoul of Rooker–Feldman."  Id.  "If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'"  Id. at 86 (quoting Exxon Mobil, 544 U.S. at 293).  To make these determinations, "a court must look at both the allegations in the plaintiff's federal complaint and the records of the state-court proceedings."  Max v. Lissner, No. 22-cv-5070, 2023 WL 2346365, at *3 (S.D.N.Y. March 3, 2023) (quoting Hoblock, 422 F.3d at 88) (cleaned up).

   **II. Issue and Claim Preclusion**

"[T]he narrow Rooker–Feldman inquiry is distinct from the question whether claim preclusion (res judicata) or issue preclusion (collateral estoppel) will defeat a federal plaintiff's suit."  Hoblock, 422 F.3d at 92.  "Because the Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to accord state judgments the same preclusive effect those judgments would have in the courts of the rendering state, New York preclusion law applies."  Id. at 93.

"Under New York law, issue preclusion will apply only if '(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate the issue in the first proceeding.'"  Id. at 94 (alteration in original) (quoting Moccio v. New York State Off. of Ct. Admin., 95 F.3d 195, 200 (2d Cir. 1996)).

4

In contrast, "[u]nder res judicata, or claim preclusion, a valid final judgment bars future actions between the same parties . . . ." Whitfield v. City of New York, 96 F.4th 504, 523 (2d Cir. 2024) (quoting Simmons v. Trans Express Inc., 37 N.Y.3d 107, 111, 148 N.Y.S.3d 178 (2021)); see Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 95 (2d Cir. 2005) ("The claim-preclusion question . . . turns . . . on whether the [plaintiffs] were parties, or were in privity with parties, to the state-court litigation."). "New York courts apply 'a transactional analysis approach in determining whether an earlier judgment has claim preclusive effect, such that once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'" Whitfield, 96 F.4th at 523 (quoting Simmons, 37 N.Y.3d at 111). However, claim preclusion only "bars the parties or their privies from relitigating issues that were or *could have* been raised in that action." See Paramount Pictures Corp. v. Allianz Risk Transfer AG, 31 N.Y.3d 64, 72, 73 N.Y.S.3d 472 (2018).

**III. Application**

Although it is undisputed that plaintiffs lost twice in state court, and that the state court judgments were rendered before plaintiffs filed the present action (thus satisfying the first and fourth requirements of the Rooker-Feldman doctrine), plaintiffs do not complain of injuries caused by the state court judgments, nor do they invite this Court to review and reject those judgments. Accordingly, Rooker-Feldman does not preclude plaintiffs' suit. However, plaintiffs' suit is still barred by claim preclusion. See Hoblock, 422 F.3d at 88 n.6.

In Hoblock, the Second Circuit explained the difference between a party complaining of injuries caused by a state court judgment, and a party asserting in federal court injuries that merely conflict with the conclusion of a state court judgment.

5

A father suing in "federal court for the return of his son" on grounds that a state court judgment violated his "due-process rights," for example, would be a party "complaining of an injury caused by the state judgment" barred by Rooker-Feldman. See Hoblock, 422 F.3d at 87. By contrast, a plaintiff who sued an employer in state court for violating both state and federal discrimination laws and lost, who then brought the "same suit in federal court" based on the employer's discriminatory actions, would "not be alleging injury from the state judgment," even though the suit would conflict with the conclusion reached by the state court. See id. at 87-88. The Court noted, however, that "in some circumstances, federal suits that purport to complain of injury by individuals in reality complain of injury by state-court judgments." Id. at 88. A plaintiff, therefore, cannot disguise an action by "clever pleading," if the alleged injury was, in fact, caused by a state court order or judgment. See id.

Here, plaintiffs do not allege injuries caused by the state court judgment. Rather, plaintiffs argue that defendants, in confiscating and selling the property for an amount far below its actual value pursuant to the New York State Real Property Tax Law and the Westbury Village Chapter Code, relied on an unconstitutional application of those laws. It is defendants' actions, and the laws defendants relied on, not the two state court judgments, that plaintiffs argue are unconstitutional, a situation more analogous to the second example above.

Plaintiffs cannot avoid Rooker-Feldman simply by "clever pleading." If defendants' actions were actually caused by or taken pursuant to a state court order or judgment, then plaintiffs are really appealing a state court decision in federal court – an action clearly barred by Rooker-Feldman. Here, however, defendants did not sell or obtain the property pursuant to the state court judgments. Because plaintiffs failed to pay their property taxes on time, the Village defendants obtained a tax lien against the property. The Village then sold the property to BR

6

Madison, who subsequently transferred its ownership to NPI. Only then did NPI commence the first lawsuit to quiet title in state court. The two state court cases are therefore irrelevant under Rooker-Feldman, as they were not the cause of plaintiff's alleged injuries. See McKithen v. Brown, 481 F.3d 89, 98 (2d Cir. 2007) ("[A] party is not complaining of an injury 'caused by' a state-court judgment when the exact injury of which the party complains in federal court existed *prior* in time to the state-court proceedings, and so could not have been 'caused by' those proceedings.").

Issue preclusion does not apply here, as the state courts never "actually and necessarily decided" plaintiffs' claims that defendants violated the Fifth Amendment's Takings Clause and the Eighth Amendment's Excessive Fines Clause. See Hoblock, 422 F.3d at 94. "An issue is 'raised' and 'actually litigated' for collateral estoppel purposes when it is submitted for determination, and is determined, and may be so submitted, inter alia, by pleading, or on a motion for summary judgment." Montoya v. JL Astoria Sound, Inc., 92 A.D.3d 736, 738, 939 N.Y.S.2d 92 (2nd Dep't 2012) (citation omitted). Plaintiffs raised their Eighth Amendment claim for the first time on appeal to the Appellate Division in the second state court action. The Appellate Division upheld the Nassau County Supreme Court's decision dismissing plaintiffs' claim on collateral estoppel grounds, without considering the merits of plaintiffs' Eighth Amendment argument. Therefore, plaintiffs' Takings Clause and Eighth Amendment claims were never "actually and necessarily decided" in the two state court cases.

However, plaintiffs satisfy all the elements of claim preclusion. Under claim preclusion, plaintiffs "were parties, or were in privity with parties, to the state-court litigation." Hoblock, 422 F.3d at 95 (citation omitted). "[P]laintiffs in a federal suit that follows a state suit are in privity with the state plaintiffs where 'their interests are the same and [the federal plaintiffs] are

7

controlled by the same party or parties' as the state plaintiffs." Id. (alteration in original) (quoting Ferris v. Cuevas, 118 F.3d 122, 128 (2d Cir. 1997)); see Ferris, 118 F.3d at 126 ("The New York Court of Appeals has stated that privity 'includes those who are successors to a property interest . . . those whose interests are represented by a party to the action, and possibly coparties to a prior action.'" (emphasis omitted) (quoting Watts v. Swiss Bank Corp., 27 N.Y.2d 270, 277, 317 N.Y.S.2d 315 (1970))).

AOPC, one of the plaintiffs here, is the same party to both state actions – it was a defendant in the first state court action and a plaintiff in the second. AOPC formerly owned the subject property before it was sold by defendants. AOPC, in turn, was formerly owned by the Estate of Mary Ottavino, another plaintiff in the second state court action. The Estate of Margaret Ottavino, represented by preliminary executor James Trent, alleges it "has a lawful right to" the Estate of Mary Ottavino "pursuant to [her] Last Will and Testament." The Estate of Margaret Ottavino, therefore, would be a successor to Mary Ottavino's interest in the subject property. Both plaintiffs here seek the same relief – "restoration" of the deed to the property to AOPC, and a declaration that the laws relied upon by defendants are unconstitutional. Clearly, then, the Estate of Margaret Ottavino is in privity with AOPC and the Estate of Mary Ottavino, because the Estate of Margaret Ottavino's interests and the interests of AOPC are the same, and the Estate of Margaret Ottavino is a successor to the interest in the subject property formerly held by Mary Ottavino.

Although plaintiffs assert "different theories" for the claims plaintiffs asserted in the state court actions, both federal and state court actions arise "out of the same transaction or series of transactions," because they all arise out of defendants' sale of the subject property. See Whitfield, 96 F.4th at 523.

8

Plaintiffs argue that claim preclusion does not apply, because the Supreme Court's decision in Tyler v. Hennepin County, 598 U.S. 631 (2023), gives them a new claim that they could not have asserted at the time the state courts issued their final judgments. Plaintiffs contend that Tyler retroactively makes the New York and local laws applied by defendants in the sale of the subject property, unconstitutional. There are two main defects in plaintiffs' arguments, however.

First, plaintiffs cite Harper v. Virginia Department of Taxation, 509 U.S. 86 (1993), to show that Tyler should apply retroactively. But as plaintiffs themselves acknowledge, Harper only requires a rule of federal law to apply retroactively to "all cases still open on direct review." See Harper, 509 U.S. at 97. Because plaintiffs' state court cases have concluded, their present suit is barred by claim preclusion and is not "still open on direct review."

Second, plaintiffs' argument that they "could not possibly have anticipated" their present arguments in the state court cases is unconvincing. Why couldn't they have? Tyler and many others certainly did. The idea that the government may not withhold the surplus of proceeds from a sale pursuant to an unpaid tax bill without violating the Takings Clause is not a new one. The Tyler Court pointed to a long common law and prevalent statutory tradition of selling off no more land than necessary to pay the outstanding debt. As the Supreme Court explained in Tyler, prior Supreme Court "precedents have also recognized the principle that a taxpayer is entitled to the surplus in excess of the debt owed." 598 U.S. at 642; see, e.g., United States v. Lawton, 110 U.S. 146, 150 (1884) ("To withhold the surplus from the owner would be to violate the Fifth Amendment to the Constitution, and deprive him of his property without due process of law or take his property for public use without just compensation."). Just because the Supreme Court issued a favorable decision to plaintiffs' arguments after the two state court cases had already

9

concluded does not change the fact that plaintiffs could have still raised those arguments in the state court cases.

It may be unfortunate that plaintiffs find themselves without a judicial remedy to what may well be a deprivation of their property without compensation. But "[t]here is simply no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata*." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 401 (1981) (internal quotation marks and citation omitted). As the Supreme Court explained, "[t]he doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. . . . It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts." Id. (quoting Hart Steel Co. v. R.R. Supply Co., 244 U.S. 294, 299 (1917)). "[P]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." Id. (citation omitted). Plaintiffs should have asserted their constitutional arguments when the opportunity to do so first became available to them in state court. Because they did not, they are now barred by claim preclusion from asserting those arguments in this Court.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are granted.

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
October 26, 2025

10